Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABU MIAH,<br><br>   Plaintiff,<br><br>   v.<br><br>AERPIO PHARMACEUTICALS, INC., STEVE PRELACK, ANUPAM DALAL, CALEY CASTELEIN, CHERYL COHEN, JOSEPH GARDNER, and PRAVIN DUGEL,<br><br>   Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Abu Miah ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Aerpio Pharmaceuticals, Inc. ("Aerpio" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17

1

C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Aerpio and Aadi Bioscience, Inc. ("Aadi").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in this District.[1]

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Aerpio common stock.

7. Defendant Aerpio is a biopharmaceutical company that focuses on developing and commercializing compounds that activate Tie2 for the treatment of ocular disease and vascular

---

[1] For example, the Company reportedly participated in conferences in New York City in recent years.

stabilization. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "ARPO."

8. Defendant Steve Prelack ("Prelack") is Chairman of the Board of the Company.

9. Defendant Anupam Dalal ("Dalal") is a director of the Company.

10. Defendant Caley Castelein ("Castelein") is a director of the Company.

11. Defendant Cheryl Cohen ("Cohen") is a director of the Company.

12. Defendant Joseph Gardner ("Gardner") is Founder, President, and a director of the Company.

13. Defendant Pravin Dugel ("Dugel") is a director of the Company.

14. Defendants Prelack, Dalal, Castelein, Cohen, Gardner, and Dugel are collectively referred to herein as the "Individual Defendants."

15. Defendants Aerpio and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

16. On May 17, 2021, Aerpio and Aadi announced that they had entered into a definitive merger agreement. Under the terms of the merger agreement, Aadi shareholders will receive shares of newly issued Aerpio common stock. On a pro forma basis, Aadi shareholders will own approximately 66.8% and shareholders of Aerpio will own approximately 33.2% of the combined company upon the closing of the Proposed Transaction, prior to the anticipated PIPE financing transaction. Following the closing of the concurrent PIPE financing, Aerpio shareholders will own approximately 14.7% of the combined company. The actual allocation is subject to adjustment based on Aerpio's cash balance at the time of closing.

17. The press release announcing the Proposed Transaction states, in pertinent part:

**Aerpio Pharmaceuticals and Aadi Bioscience Enter into a Definitive Merger Agreement**

May 17, 2021 07:00 ET | Source: Aerpio Pharmaceuticals, Inc.

- *Transaction to create Nasdaq-listed company focused on advancing Aadi Bioscience's late-stage pipeline for genetically-defined cancers with alterations in mTOR pathway genes*
- *Concurrent $155 million PIPE financing is backed by leading life science investors led by Acuta Capital Partners and KVP Capital and including Avoro Capital Advisors; Avoro Ventures; Venrock Healthcare Capital Partners; BVF Partners, L.P.; Vivo Capital; Alta Bioequities, L.P.; Rock Springs Capital; RTW Investments, LP; Acorn Bioventures; and Serrado Capital LLC*
- *Combined company cash at closing will fund operations into 2024*
- *Rolling NDA submission to the FDA for FYARRO$^{TM}$ in advanced malignant perivascular epithelioid sarcoma (PEComa) expected to be completed in mid-2021*
- *FYARRO$^{TM}$ preliminary data in patients with solid tumors harboring inactivating alterations in the mTOR pathway genes TSC1 and TSC2 to be presented at ASCO 2021[1]*
- *FYARRO$^{TM}$ tumor-agnostic registrational trial in solid tumors harboring inactivating alterations in the mTOR pathway genes TSC1 and TSC2 expected to be initiated by the end of 2021*

CINCINNATI and PACIFIC PALISADES, Calif., May 17, 2021 (GLOBE NEWSWIRE) -- Aerpio Pharmaceuticals, Inc. ("Aerpio") (Nasdaq: ARPO), a biopharmaceutical company focused on developing compounds that activate Tie2, and Aadi Bioscience, Inc. ("Aadi"), a privately-held biopharmaceutical company focusing on precision therapies for genetically-defined cancers with alterations in mTOR pathway genes, announced their entry into a definitive merger agreement. Following the proposed merger, Aerpio will change its name to "Aadi Bioscience, Inc." and the combined public company will focus on advancing Aadi's lead product candidate, FYARRO$^{TM}$ (sirolimus albumin-bound nanoparticles for injectable suspension; *nab*-sirolimus; ABI-009).

In support of the merger, Aerpio has entered into subscription agreements to raise $155 million in a Private Investment in Public Equity (PIPE) financing led by Acuta Capital Partners and KVP Capital and including Avoro Capital Advisors; Avoro Ventures; Venrock Healthcare Capital Partners; BVF Partners, L.P.; Vivo Capital; Alta Bioequities, L.P.; Rock Springs Capital; RTW Investments, LP; Acorn Bioventures; and Serrado Capital LLC as well as other undisclosed institutional investors.

The PIPE financing is expected to be consummated concurrently with the closing of the merger. Proceeds from the PIPE financing are intended to be used for commercialization of FYARRO in advanced malignant PEComa and a planned tumor-agnostic registrational trial in solid tumors harboring inactivating alterations in the mTOR pathway genes *TSC1* and *TSC2* expected to be initiated by the end of 2021. Aadi's first indication, advanced malignant PEComa, is an ultra-rare sarcoma enriched in *TSC1* and *TSC2* alterations. Aadi has received Orphan designation, Fast Track designation and Breakthrough Therapy designation from the FDA for FYARRO for the treatment of patients with advanced malignant PEComa. Together with the cash expected from both companies at closing, the net proceeds of the PIPE financing are expected to fund the company into 2024, enabling potential approval and commercial launch in PEComa as well as completion of a registrational trial in tumors harboring *TSC1* or *TSC2* inactivating alterations.

\*   \*   \*

Upon closing of the transaction, the combined company will be led by Aadi's chief executive officer, Neil Desai, and headquartered in Los Angeles, California. Aadi's board members Neil Desai and Richard Maroun; Aadi's board observer Karin Hehenberger; and current Aerpio board members Anupam Dalal and Caley Castelein will be members of the board of directors of the combined company. In addition, Behzad Aghazadeh, managing partner of Avoro Capital Advisors and Avoro Ventures, will also join the board of the combined company upon the closing of the transaction.

**About the Proposed Transaction**

Under the terms of the merger agreement, shareholders of Aadi will receive shares of newly issued Aerpio common stock. On a pro forma basis, shareholders of Aadi will own approximately 66.8% and shareholders of Aerpio will own approximately 33.2% of the combined company upon the closing of the merger, prior to the additional PIPE financing transaction. Following the closing of the concurrent PIPE financing, Aerpio shareholders will own approximately 14.7% of the combined company. The actual allocation is subject to adjustment based on Aerpio's cash balance at the time of closing.

The terms of the merger agreement contemplate that a non-transferable contingent value right (a "CVR") will be distributed to Aerpio shareholders as of immediately prior to the effective time of the merger, entitling CVR holders to receive net proceeds received by Aerpio, if any, associated with Aerpio's legacy assets. The terms and conditions of the CVRs will be pursuant to a CVR Agreement Aerpio will enter into prior to the closing of the merger (the "CVR Agreement").

The merger agreement has been approved by the boards of directors of both companies. The transaction is expected to close in the third quarter of 2021, subject to approval by Aerpio's shareholders, the completion of the PIPE financing, and

5

customary closing conditions. The PIPE financing is expected to close concurrently with, and is conditioned upon, the closing of the merger.

Additional information about the transaction will be provided in a Current Report on Form 8-K that will be filed by Aerpio with the Securities and Exchange Commission ("SEC") and will be available at www.sec.gov.

Ladenburg Thalmann & Co. Inc. is acting as financial advisor to Aerpio for the transaction and Goodwin Procter LLP is serving as its legal counsel. Perella Weinberg Partners LP and Piper Sandler & Co. are acting as financial advisors to Aadi for the transaction and Wilson Sonsini Goodrich & Rosati, P.C. is serving as legal counsel to Aadi. Jefferies LLC; Cowen and Company, LLC; and Piper Sandler & Co. are acting as placement agents for the PIPE financing.

**About Aerpio Pharmaceuticals**

Aerpio Pharmaceuticals, Inc. is a biopharmaceutical company focused on developing compounds that activate Tie2 for indications in which Aerpio believes that activation of Tie2 may have therapeutic potential. In January 2021, Aerpio announced that it had initiated a process to explore and review a range of strategic alternatives focused on maximizing stockholder value from Aerpio's clinical assets and cash resources. For more information, please visit www.aerpio.com.

**About Aadi Bioscience**

Aadi is a clinical stage biopharmaceutical company developing precision therapies for genetically-defined cancers. Aadi's primary goal is to bring transformational outcomes to cancer patients with mTOR pathway driver alterations where other mTOR inhibitors have not or cannot be effectively exploited due to problems of pharmacology, effective drug delivery, safety, or effective targeting to the disease site. Aadi's product FYARRO$^{TM}$ (sirolimus albumin-bound nanoparticles for injectable suspension; *nab*-sirolimus; ABI-009) is an mTOR inhibitor bound to human albumin that has demonstrated significantly higher tumor accumulation, mTOR target suppression, and superior efficacy over other mTOR inhibitors in preclinical models.[3] Aadi's initial focus is on treating patients with alterations in *TSC1* or *TSC2* genes, tumor suppressors that when inactivated, may be drivers in many different cancer types. Aadi's registration trial in advanced malignant PEComa (the AMPECT trial) of FYARRO demonstrated meaningful clinical efficacy in malignant PEComa[4], a type of cancer with the highest known mutation rate of *TSC1* or *TSC2* genes. Based on the AMPECT trial, emerging data for FYARRO in other solid tumors with *TSC1* or *TSC2* mutations, and following discussions with the FDA, Aadi plans to initiate a tumor-agnostic registrational trial in cancers harboring *TSC1* or *TSC2* inactivating alterations by the end of 2021.

Aadi also has ongoing studies to evaluate dosing of FYARRO in combination regimens. More information is available on the Aadi website at www.aadibio.com. Aadi has submitted an abstract[1] to the ASCO 2021 meeting.

18. On July 8, 2021, the Company filed a Schedule 14A Definitive Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

19. The Proxy Statement, which recommends that Aerpio shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Aerpio's and Aadi's financial projections; (ii) the financial analyses performed by Aerpio's financial advisor, Ladenburg Thalmann & Co. ("Ladenburg"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Aerpio's second financial advisor.

20. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Aerpio's Reasons for the Merger; Recommendations of the Aerpio Board of Directors; (iii) Opinion of Aerpio's Financial Advisor; and (iv) Certain Aerpio Management Unaudited Prospective Financial Information.

21. Unless and until the material misstatements and omissions (referenced below) are remedied before the August 17, 2021 shareholder vote on the Proposed Transaction, Aerpio shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning Aerpio's and Aadi's Financial Projections**

22. The Proxy Statement omits material information concerning Aerpio's and Aadi's

7

financial projections.

23. The Proxy Statement fails to disclose any of Aerpio's financial projections, despite the fact that Aerpio's management discussed the prospects of Aerpio with Ladenburg in connection with its fairness opinion and related financial analyses. *See* Proxy Statement at 122.

24. With respect to the "unadjusted Aerpio management Aadi projections," the Proxy Statement fails to disclose: (1) all line items underlying the projections; (2) all assumptions underlying the projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

25. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

26. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R.

§ 244.100.[2]

27. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Ladenburg's Analyses

28. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Ladenburg.

29. With respect to Ladenburg's "*Analysis of Selected Initial Public Offering Transactions*" and "*Analysis of Selected Precedent M&A Transactions*," the Proxy Statement fails to disclose: (1) the dates that each selected transaction closed; and (2) the individual inputs and assumptions used to determine the enterprise value of each transaction.

30. The Proxy Statement fails to disclose the following concerning Ladenburg's "*Discounted Cash Flow Analysis*": (1) all line items underlying Aadi's estimated after-tax unlevered free cash flows; (2) the assumptions underlying the adjustments made to Aadi's projections; (3) the individual inputs and assumptions underlying the (i) the revenue assumptions in the years 2024 to 2035 by 90% for PEComa and 63.5% for TSC1/TSC2, and (ii) discount rates ranging from 12.9% to 16.9%; (4) the basis for assuming a 28.0% corporate tax rate; and (5) the basis for Ladenburg's assumption that Aadi will have no terminal value after 2035.

31. The valuation methods, underlying assumptions, and key inputs used by

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited July 12, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

Ladenburg in rendering its purported fairness opinion must be fairly disclosed to Aerpio shareholders. The description of Ladenburg's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Aerpio shareholders are unable to fully understand Ladenburg's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Aerpio's Second Financial Advisor

32. The Proxy Statement omits material information concerning potential conflicts of interest involving Aerpio's second financial advisor.

33. The Proxy Statement fails to disclose the following concerning Aerpio's "second financial advisor": (1) the identity of the "second financial advisor"; (2) the amount of compensation the advisor has received or will receive in connection with its engagement by the Company; (3) the amount of the advisor's compensation that is contingent upon consummation of the Proposed Transaction; and (4) whether the advisor has performed past services for any parties to the Proposed Transaction and/or their affiliates, including the timing and nature of those services and the amount of compensation received for providing such services. *See* 17 C.F.R. § 229.1015(b)(4) (requiring disclosure of all material relationships between a company and its financial advisors and the compensation received by the advisors during the past two years).

34. The Proxy Statement also fails to disclose the financial analyses performed by the Company's second financial advisor, as applicable.

35. The Proxy Statement further fails to disclose the reasons the Board terminated its

engagement of the second financial advisor on April 14, 2021.

36. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

37. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

38. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

40. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

41. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

42. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information

12

with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

48. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: July 12, 2021                                Respectfully submitted,

                                                          **HALPER SADEH LLP**

                                                          By: /s/ Daniel Sadeh
                                                          Daniel Sadeh, Esq.
                                                          Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                          667 Madison Avenue, 5th Floor
                                                          New York, NY 10065
                                                          Telephone: (212) 763-0060
                                                          Facsimile: (646) 776-2600
                                                          Email: sadeh@halpersadeh.com
                                                                     zhalper@halpersadeh.com

*Counsel for Plaintiff*

15